CARROLL *v.* WALTON & WHANN CO.

*(District Court, D. Delaware. September 22, 1891.)*

**PRINCIPAL AND AGENT—SCOPE OF AUTHORITY—PURCHASE THROUGH BROKERS.**

A Wilmington firm empowered certain New York brokers to purchase a cargo of "refuse salt" equal to a sample received from the latter, the cargo then being in transit from Canada. The purchase having been made, the sellers billed the article to the purchasers as "salt-cake," which is an entirely different article. The latter notified their brokers of the mistake, who presented the matter to the sellers. The latter assured them that the salt was like the sample, which representation they telegraphed to the purchasers. The cargo having arrived in New York, the purchasers requested the brokers to examine it, which the latter refused to do, because they were ignorant of the difference between the two articles. Thereupon the purchasers wrote them that the matter appeared to be straight, and ordered them to secure a boat, and forward the salt in it, which was done; but on its arrival the article was found to be salt-cake, and the purchasers refused to receive it. *Held,* that the brokers acted within their authority, and an injury having resulted to the boat from the acids in the salt-cake, in consequence of the delay caused by the refusal to receive it, the purchasers were liable therefor, as well as for freight and demurrage.

In Admiralty. Libel *in personam* by Thomas Carroll against the Walton & Whann Company.

*Hyland & Zabriskie,* for libelant.
*Benj. Nields,* for respondents.

WALES, J. The libelant sues to recover freight, demurrage, and damages. His claim is founded on a charter-party, which reads as follows:

"JUNE 11, 1889.

"We have this day chartered for our principals, the Walton & Whann Co., Wilmington, Del., the steam canal-boat J. H. Taylor, to take about one hundred and sixty-five (165) tons of refuse salt-cake in bulk from the canal-boat W. E. Duryea, at pier 6, East river, to the works of the Walton & Whann Co., Wilmington, Del., at the rate of one dollar ($1.00) per ton of 2,240 lbs.: charterers to load and discharge boat, and captain to trim boat, to insure well, vessel to be loaded with customary dispatch. "HELLER, HIRSH & CO.,
"S. G.,
"Agents.
"THOMAS CARROLL,
"WM. DENNY,
"Agt.

*"Thro Mr. Denny, 10 South St."*

The Duryea's cargo, which had been purchased for the defendants by their agents, Heller, Hirsh & Co., was taken on board of the Taylor, and carried to Wilmington, where the libelant reported his arrival and

readiness to discharge to the defendants, who refused to accept a delivery of or permit the cargo to be landed at their wharves; assigning as a reason for their refusal that the cargo was not like the sample by which they had purchased, and that their New York agents had exceeded their authority in chartering the libelant's boat. In consequence of this action on the part of the defendants, the libelant alleges that he was detained at Wilmington for several days before he could dispose of his cargo by storing it in a warehouse, and that in the mean time his vessel was injured by the action of the acid contained in the cargo, which had eaten away her oakum and softened her lining.

The answer of the defendants repudiates the contracts made by their agents, both in buying the Duryea's cargo and in chartering the Taylor. The question presented by the pleadings, and discussed at the hearing, is one of agency. The defense is that Heller, Hirsh & Co., who had previously sent a sample of refuse salt to the defendants, were instructed by the latter to buy a quantity similar in quality to the sample, and to ship the same to Wilmington, instead of doing which they had bought an entirely different article, which was of small value, and of no use to the defendants; and that as Heller, Hirsh & Co. acted as special agents only, and under particular instructions, the libelant contracted with them at his peril, and cannot recover in this suit. The evidence covers many pages, including copies of letters and telegrams which passed between the defendants and their New York agents in relation to this business; and after a careful examination of these papers, in connection with the oral testimony, I have come to the conclusion that the defendants' agents acted strictly within the authority conferred on them by their principals, both in the purchase and in the transshipment of the Duryea's cargo.

Heller, Hirsh & Co. were commission merchants and brokers in chemicals and fertilizer materials in New York, and had had dealings with the defendants for many years prior to this transaction. On May 1, 1889, the defendants wrote to Heller, Hirsh & Co., inquiring: "What have you in the way of refuse salt that you can offer for shipment during the present month?" On the next day, Heller, Hirsh & Co. replied: "By express to-night we are sending you sample of refuse salt for your examination, and, if you can use it, will you please let us have your best offer for 200/300 tons, delivered Wilmington by canal-boat." After some further correspondence, a price was agreed on; Heller, Hirsh & Co. were instructed to buy; and the following sales-note was sent to the defendants:

[Copy.]

"NEW YORK, May 7, 1889.

"Sold, for account of Mess. E. S. Kuh & Tuska, to the Walton & Whann Co., Wilmington, Del., two hundred to two hundred and fifty (200/250) tons of refuse salt, in bulk, similar to sample sent, at the rate of three dollars and fifty cents ($3.50) per gross ton, f. o. b. vessel, New York.

"HELLER, HIRSH & CO., Brokers.

"Terms Cash."

At the date of this contract the salt was in Canada, or on its way from there to New York, in the W. E. Duryea. Before the cargo was trans-shipped to the J. E. Taylor, it was billed to the defendants by Kuh & Tuska as salt-cake, and Heller, Hirsh & Co. were immediately notified by their principals that their bargain was for refuse salt, and not for salt-cake. Heller, Hirsh & Co. at once called the attention of Kuh & Tuska to this mistake, and the latter firm assured them that the salt was just like the sample, and this representation was repeated to the defendants by telegram from their agents, June 10, 1889. On the same day Heller, Hirsh & Co. wrote to the defendants: "We informed Messrs. K. & T. that you claimed to have purchased refuse salt, and they inform us that this is refuse salt like sample furnished by them and by which you bought." By this time the Duryea had arrived at New York, and the defendants requested their agents to examine her cargo, and ascertain its quality and condition. Heller, Hirsh & Co. declined to comply with this request, because, not being familiar with the article, and never having had any experience in handling it, they would not be competent to decide whether it was what it was represented to be or not. The defendants, having been thus put on their guard as to the character of the cargo, accepted the statements of Kuh & Tuska that it was refuse salt, similar to sample, and wrote to Heller, Hirsh & Co., June 14, 1889: "All now appears to be straight regarding the salt, providing the salt is in good order as discharged in New York from the original barge." What was meant by "good order" is shown from other testimony to be that the cargo should not be damaged by dampness caused by leakage of the vessel.

Having ratified the action of their agents in the purchase of the Duryea's cargo, the defendants next instructed them to employ the captain of that boat to take the cargo on to Wilmington without breaking bulk, if he would do it on reasonable terms, and, failing to make that arrangement, to secure another vessel. The captain of the Duryea demanded an exorbitant rate, and Heller, Hirsh & Co. chartered the Taylor. The evidence is not conflicting or contradictory in reference to any material fact. The cargo, on its arrival at Wilmington, turned out to be salt-cake, and not refuse salt. The two materials are similar in color, and, when pulverized, are so much alike in appearance that a casual observer might think they were the same. Refuse salt is damaged, or impure common salt. Salt-cake is a refuse produced in the manufacture of muriatic acid. Refuse salt is not a fertilizer material, in any acceptation of that term, and is used as a mechanical ingredient only, by the manufacturers of fertilizers, who also sometimes use salt-cake, but for a different purpose. The libelant says that he did not know the difference between the two, and that he would not have taken the Duryea's cargo on board of his boat if he had known what it was. His bill of lading calls for "a lot of refuse salt in bulk." Heller, Hirsh & Co. were also ignorant of the appearance and qualities of these articles, and prudently abstained from passing judgment on the cargo. All they could do, and all

they did, in making the purchase for the defendants, was to communicate to them the representations made by Kuh & Tuska, and the defendants unfortunately relied on those representations, instead of having a competent person in New York to inspect the cargo, and report upon its nature and quality. There is no doubt that gross carelessness, or intentional fraud, was committed by some one in causing a cargo of salt-cake to be put on the Taylor, and sent to the defendants; but, whether it was a mistake or a trick, the libelant was as innocent of it as were the defendants or their agents. As I view the evidence, Kuh & Tuska would seem to be liable to the defendants. They certainly are not to the libelant, as there was no privity of contract between them and him. Neither could the libelant seek redress from Heller, Hirsh & Co., because they signed the charter-party as agents for the defendants, and acted within the scope of their authority. *Whitney* v. *Wyman*, 101 U. S. 392. The libelant, therefore, has no other recourse than to the defendants. If I have not misunderstood the evidence, it proves that the defendants, through their specially instructed agents in New York, bought the Duryea's cargo, and employed the libelant's boat to carry that identical cargo to Wilmington. On this proof, a decree must be entered for the libelant, with an order of reference to ascertain the amounts respectively due to him for freight, demurrage and damages.